UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
 CCRF 2007-MF1 East 53 Complex, LLC, *a
 Delaware limited liability company,*


                                    Plaintiff,                          **REPORT AND
                                                                       RECOMMENDATION**
                    -against-                                           19 CV 2553 (RJD) (CLP)


 EAST 53 BSD LLC, *a New York limited
 Liability company,* et al.,

                                    Defendants.
------------------------------------------------------------ X

**POLLAK**, Chief United States Magistrate Judge:

On May 1, 2019, plaintiff CCRF 2007-MFI East 53 Complex, LLC, a Delaware limited

liability company[1] ("plaintiff" or "lender"), commenced this action against defendants East 53

BSD LLC, a New York limited liability company ("East 53 BSD"),[2] and Solomon Singer,

alleging claims for unlawful conversion of rental proceeds, unjust enrichment and money had

and received under New York common law, relating to certain commercial property located at

87-91 East 53rd Street, Brooklyn, N.Y. 11203 (the "Property"). On February 20, 2020, plaintiff

filed an Amended Complaint, adding as defendants Abraham W. Realty Corp. (the "Borrower

Defendant"), Jasmine Culzac, who signed the guaranty for the Borrower in connection with the

---

[1] When a party or parties to a litigation are limited liability corporations, the Court looks to the citizenship of the members of each limited liability corporation, for purposes of determining whether subject matter jurisdiction based on diversity exists, pursuant to 28 U.S.C. §1332. See Bayerische Landesbank, New York Branch v. Aladdin Capital Management LLC, 692 F.3d 42, 49 (2d Cir. 2012). Here, plaintiff has alleged that it is a Delaware limited liability corporation, whose sole member is U.S. Bank National Association, Trustee for the Registered Holder of Countrywide Commercial Mortgage Trust 2007-MF1. (Amended Complaint filed on February 20, 2020 ("Am. Compl.") ¶ 12). Therefore, the Court looks to the citizenship of the Trustee. See Navarro Savings Assoc. v. Lee, 446 U.S. 458, 464 (1980). Here, plaintiff alleges that the sole Trustee is a citizen of Ohio. (Am. Compl. ¶ 12).

[2] Defendant East 53 BSD is also a limited liability corporation, incorporated in New York, and according to the Complaint, none of its members are a citizen of Ohio, making it diverse from plaintiff. (Am. Compl. ¶ 13).

loan (the "Guarantor") (Am. Compl. ¶ 16), and various City agencies, including the New York City Department of Finance, the New York City Department of Environmental Control Board, the Criminal Court of the City of New York, the New York City Department of Housing Preservation and Development, and the Bureau of Highway Operations, which may have an interest in the Property based on unpaid taxes, liens and other charges.  (Id. ¶¶ 17-21).  Also added as defendants in the Amended Complaint were a number of additional individuals and entities, including Alexander Levkovich, Esq., Judith Culzac, Jomar Holmes, Ian Hosang, Denisial Holmes, FIA Card Services, N.A., and Does 1 to 100.  (Id. ¶¶ 22-27).

Currently pending before this Court are several motions:  1) plaintiff's April 7, 2020 motion for the appointment of a receiver; 2) a motion to set aside the default filed by defendant BSD 53 and Solomon Singer; and 3) a motion to vacate the default filed by Judith Culzac and Jasmine Culzac.

For the reasons set forth below, it is respectfully recommended that plaintiff's motion to appoint a receiver be granted, that defendants East 53 BSD and Solomon Singer's motion to set aside the default be granted, and that defendants Judith and Jasmine Culzac's motions to vacate the default be granted.

FACTUAL BACKGROUND

According to the Amended Complaint, on October 11, 2007, the Borrower, Abraham Realty Corp., executed and delivered a Note in the amount of $2,300,000 to Countrywide Bank (the "Original Lender").  (Am. Compl. ¶ 29, Ex. A).  At the same time, as security for the loan, the Borrower delivered an Amended and Restated Mortgage (the "Mortgage"), securing a lien on the Property as security for the repayment of the loan.  (Id. ¶ 30, Ex. B).  The Property is

described as a 19,000 square foot, four-story walk-up, multi-family building, consisting of 26 units. (Id. ¶ 42). According to the Amended Complaint, the building is occupied by tenants and generates monthly rental income. (Id.)[3]

The Mortgage was recorded with the City of New York on October 30, 2007. (Id.) In addition, the Borrower also executed an Assignment of Leases and Rents ("Assignment of Rents"), which plaintiff describes as an "absolute and unconditional present assignment of the right to collect Rental Proceeds" and apply the amounts to the partial payment of the Mortgage Debt. (Id. ¶ 31, Ex. C). As part of the Assignment of Rents, plaintiff granted the Borrower a revocable license to collect and use the Rental Proceeds; upon default on the Mortgage payments, the terms of the Assignment of Rents was to be automatically revoked. (Id. ¶ 32).

Thereafter, through a series of assignments detailed in the Amended Complaint,[4] the Mortgage and Note were acquired by plaintiff Lender on March 5, 2014. (Id. ¶¶ 33-37, Exs. D-G). Plaintiff alleges that as of 2014, the Borrower failed to make payments under the Note and as a result, an event of default has occurred. (Id. ¶ 38). On February 20, 2017, plaintiff learned that East 53 BSD was claiming that it had purchased all ownership rights in the Property in 2013 for a total of $200,000, even though plaintiff alleges that the Property has a multi-million dollar fair market value. (Id. ¶ 39; see Pl.'s Mem.[5] at 5).

---

[3] Due to the COVID-19 pandemic, certain multifamily properties with FHA-insured mortgages covered under the CARES Act qualify for mortgage forbearance. See 15 U.S.C.A. § 9056(c)(2). The Court proceeds on the basis of plaintiff's assurances that the CARES Act does not apply to the subject property in this case. See ECF No. 95.

[4] Since the issue of standing based on an alleged deficiency in the assignment of the Mortgage to the Lender has been raised in connection with the motion to vacate the default, the details of the transfers and assignments are addressed in detail infra at pp.13–15.

[5] Citations to "Pl.'s Mem." refers to plaintiff's Memorandum of Law in Opposition to Motion to Vacate Default, dated May 14, 2020, ECF No. 72.

Plaintiff alleges that since October 2014, the East 53 BSD defendants have been collecting rents but no rent proceeds have been paid to plaintiff despite the fact that the Mortgage is in default.  (Id. ¶¶ 45-46).  Plaintiff asserts that under the Assignment of Rents, it is entitled to receive the significant rental payments that have been collected by defendants.  (Id.)

In its First Cause of Action, plaintiff seeks an order of foreclosure, based on the default and acceleration of the amounts due under the loan agreements.  (Id. ¶¶ 50-51).  The Second Cause of Action seeks the appointment of a receiver under the loan documents.  (Id. ¶¶ 52-53).  The Third Cause of Action brings a claim of conversion based on the Rental Proceeds due to plaintiff (id. ¶¶ 54-60); the Fourth Cause of Action is for unjust enrichment (id. ¶¶ 61-64); and the Fifth Cause of Action is for money had and received by the East 53 BSD defendants.  (Id. ¶¶ 65-69).

## PROCEDURAL HISTORY

Following the filing and service of the initial Complaint on May 1, 2019, defendant East 53 BSD and Solomon Singer sought an extension of time to file an Answer to the Complaint from June 4, 2019 until July 5, 2019, which was granted by the Court on June 6, 2019.  On June 7, 2019, Michael B. Wolk, Esq. filed a Notice of Appearance on behalf of East 53 BSD and Singer.  Defendants then filed a second request to extend the time to answer until July 8, 2019.  No answer was filed but on July 9, 2019, the District Court issued an Order scheduling a pre-motion conference for August 9, 2019 to deal with defendants' motion to dismiss the action.  That pre-motion conference was adjourned to August 29, 2019 by Order of the District Court and the parties appeared for an initial conference before the undersigned on August 27, 2019.  During the pre-motion conference, which was held on September 4, 2019, the court scheduled a

4

settlement conference for September 24, 2019, and directed that counsel in the State Court

action[6] be present.  After several adjournments, the settlement conference was referred to the

undersigned and scheduled for December 19, 2019 and then adjourned to January 30, 2020, at

defendants' request due to medical issues.  The settlement conference was held on January 30,

2020, at which time it was determined that settlement was unlikely and that discovery should

proceed.  A schedule for the exchange of discovery was then set, along with a deadline for

plaintiff to file an Amended Complaint within 20 days.

On February 5, 2020, counsel for defendants' counsel, Mr. Wolk, moved to withdraw due

"to irreconcilable litigation differences and outstanding legal fees," and asked that defendants be

given a 30-day stay to obtain new counsel.  This Court ordered that the motion to withdraw be

served on defendants and a hearing was set for March 10, 2020.

On February 20, 2020, the plaintiff filed the Amended Complaint, naming additional

parties and adding certain additional allegations.  Summons were issued and the defendants were

served in early March, with the Answers due at or about March 24 through March 26, 2020.  No

answers were filed.

On April 7, 2020, plaintiff filed a Motion to Appoint a Receiver, and on April 9, 2020,

plaintiff filed a request for Certificate of Default.  On April 14, 2020, the Clerk of Court entered

a default against all of the defendants.  On April 30, 2020, defendants East 53 BSD and Solomon

Singer filed a letter motion seeking to set aside the default and seeking an extension of time to

file an Answer.  The defendants were given an extension of time to file a response to plaintiff's

motion for the appointment of a receiver until May 5, 2020.  Thereafter, on May 26, 2020,

---

[6] See discussion of the State Court foreclosure action, infra at pp. 10–13.

Jasmine Culzac filed a motion to vacate the entry of default.  A motion was filed by Judith Culzac on May 27, 2020, seeking to vacate the default against her as well.[7]

On July 15, 2020, the Court held a hearing on the motion to appoint a receiver and the motion to set aside the default as to BSD 53 and Solomon Singer.  The Culzac defendants failed to appear, and were ordered to appear for a hearing before this Court on September 3, 2020. They again failed to appear.  Accordingly, the Court rescheduled the proceeding for October 2, 2020, and a hearing on the motion to vacate the default as to the Culzacs took place on that date. .

DISCUSSION

A.   Motion To Vacate - Standards

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Rule 55 sets forth a two-step process for an entry of default judgment.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  See id.  Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment.  See Fed. R. Civ. P. 55(b).

---

[7] Upon plaintiff's request of November 10, 2020, the Court granted leave to file a sur-reply to the Motion to Appoint a Receiver, but over a month later, none has been filed.  This has caused further delay and flies in the face of plaintiff's claims of prejudice if the defaults are vacated, see discussion infra at pp. 16, 22.

Pursuant to Rule 55(c), the Court may set aside an entry of default for good cause.  The standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the "excusable neglect" standard for setting aside a default judgment by motion pursuant to Rule 60(b).  Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981).  The main factors for the Court to consider in determining the appropriateness of relieving a party of a default are whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented.  Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993); Meehan v. Snow, 652 F.2d at 277.  Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result.  Id.  The party seeking relief from an entry of default bears the burden of proof.  Aetna Life Ins. Co. v. Licht, No. 03 CV 6764, 2004 WL 2389824, at *3 (S.D.N.Y. Oct. 25, 2004) (quoting In re Martin-Trigona, 763 F.2d 503, 505 n.2 (2d Cir. 1985)).  Defaults are not favored, however, and doubts are to be resolved in favor of a trial on the merits.  Meehan v. Snow, 652 F.2d at 277.


B.  Analysis – The East 53 BSD and Singer Defendants' Motion

Defendants East 53 BSD and Singer seek to vacate the Clerk's entry of default against them, arguing that the default in this case was not willful and that they have several meritorious defenses to the action.  (East 53 BSD 4/30/2020 Ltr.[8] at 2).

---

[8] Citations to "East 53 BSD 4/30/2020 Ltr." refer to the April 30, 2020 letter motion filed by defendants East 53 BSD LLC and Solomon Singer, seeking to vacate the Clerk's Certificate of Default, ECF No. 69.

1. <u>Willfulness</u>

Willfulness is "more than mere[] neglect or carelessness." <u>Aetna Life Ins. Co. v. Licht</u>, 2004 WL 2389824, at *4 (finding defendant's explanations for letting the case "languish" plausible and acceptable). A finding of willfulness does not require that the default occurred due to bad faith, but the default must be the "deliberate and intended consequence of movant's actions." <u>Id.</u> (citing <u>Gucci Am., Inc. v. Gold Ctr. Jewelry</u>, 158 F.3d 631, 635 (2d Cir. 1998)). "Conduct may be found to be willful where it is egregious, not satisfactorily explained, or is rationalized by flimsy excuse." <u>Id.</u>

Defendants argue that the default here was not willful, noting that both East 53 BSD and Singer have had counsel, Mr. Wolk, since the onset of the action. (East 53 BSD 4/30/2020 Ltr. at 2). According to current counsel for the defendants, Samuel Katz, PLLC, the defendants reached out to him in early March to ask him to take over the case from Mr. Wolk, and to file an Answer to the Amended Complaint. (<u>Id.</u>) Defendants contend that at the time they reached out to Mr. Katz, defendants' time to file an Answer to the Amended Complaint had not yet expired. (<u>Id.</u>) According to counsel, shortly thereafter, he was stricken with COVID-19 and was very ill for several weeks. (<u>Id.</u>) His father also was hospitalized with a serious case of COVID-19 and with all of this going on in his personal life, counsel admits that he was unable to focus. (<u>Id.</u>) Counsel represents that he reached out to plaintiff's counsel, explained his circumstances and asked for an extension of time to answer before the Clerk entered a default. (<u>Id.</u> at 2-3).

Plaintiff argues that counsel's health issues are a "red herring" because the default occurred on March 4, 2020 while Mr. Wolk was still counsel. (Pl.'s Mem. at 3). Indeed, plaintiff notes that Mr. Wolk remained attorney of record until May 1, 2020, almost two months

after the deadline for filing an answer had expired. (Id.)  During this time, Mr. Wolk never requested an extension of time or contacted either the plaintiff or the court.  (Id.)

Unlike the "outright disregard" shown by defendants in other cases and found to support a finding that the default was willful, here counsel has offered a compelling reason as to why he personally was unable to file an answer on behalf of the defendants.  Cf. S.E.C. v. McNulty, 137 F.3d 732, 739 (2d Cir.) (affirming the district court's finding of willfulness where defendant's counsel failed to file an answer despite repeated warnings that plaintiff would move for default judgment), cert. denied, Shanklin v. S.E.C., 525 U.S. 931 (1998); Dominguez v. United States, 583 F.2d 615, 618 (2d Cir. 1978) (finding that counsel's 10-month delay in seeking to vacate a dismissal could not be characterized as excusable neglect), cert. denied, 439 U.S. 1117 (1979); see also Dixon v. Ragland, No. 03 CV 0826, 2005 WL 2649484, at *2 (S.D.N.Y. Oct. 14, 2005) (finding willfulness where defendants offered no explanation for their failure to respond to the complaint).  While plaintiff may be correct that the time to file an Answer expired on March 4, 2020, at a time when Mr. Wolk was attorney of record, defendants have submitted an email from Mr. Katz, dated April 12, 2020, corroborating his claim that he reached out to plaintiff's counsel indicating that he would be filing a substitution of counsel and noting that he had been ill with the COVID-19 virus.  (Defs.' 4/30/2020 Ltr., Ex. A).  Given the short delay between the expiration of the filing deadline, the onset of the pandemic,[9] and the fact that defendants had

---

[9] The Court takes judicial notice of the fact that at or around the beginning of March, the COVID-19 pandemic hit New York City with unprecedented consequences, causing many businesses and courts to close their doors in an effort to contain the spread.  On March 9, 2020, the Chief Judge of this Court issued one of many Administrative Orders restricting access to the courthouses in the Eastern District of New York.  Thus, while the failure to file the Answer by March 4, 2020 and the failure to request additional time to answer under normal conditions could be seen as a deliberate effort to delay, here the circumstances affecting the City and its residents provides a justifiable excuse for counsel's failure.  Even if Mr. Wolk was counsel of record at the time, he may have already been told that he was being substituted out and thus, he may have thought the responsibility for filing an answer lay with his successor counsel.

previously retained counsel and litigated the matter diligently prior to the filing of the amended pleadings, the Court concludes that the default was not willful on the part of the defendants.

2. <u>Meritorious Defense</u>

If willfulness were the only factor to be considered in determining whether to vacate a default, the Court would have no hesitation in recommending that the motion to vacate be granted.  However, the Court is constrained to consider the two remaining factors as they apply in this case.

To demonstrate a sufficiently meritorious defense, "the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense.  <u>Aetna Life Ins. Co. v. Licht</u>, 2004 WL 2389824, at *4.  In other words, the defendant must show that there is some determination to be made by the factfinder. <u>American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.</u>, 92 F.3d 57, 61 (2d Cir. 1996).  Although the proffered defense "need not be ultimately persuasive at this stage," <u>id.</u>, defendants cannot simply assert in a conclusory fashion that they would prevail at trial.  <u>Aetna Life Ins. Co. v. Licht</u>, 2004 WL 2389824, at *4.

Defendants argue that they have several meritorious defenses, including plaintiff's lack of standing and a defense based on res judicata and collateral estoppel.  (East 43 BSD 4/30/2020 Ltr. at 3).  In determining whether a meritorious defense exists, the court is constrained to consider whether "if based on the defendant's version of events, the factfinder has some determination to make."  <u>Sibley v. Choice Hotels Int'l, Inc.</u>, 304 F.R.D. 125, 131 (E.D.N.Y. 2015).

Here, defendants argue that there was a prior foreclosure action commenced in Kings County Supreme Court relating to this mortgage. Index No. 9290/2014. According to defendants, the Justice in that matter denied plaintiff's motion to dismiss the affirmative defense of lack of standing, finding that plaintiff had failed to submit documentary evidence of two purported assignments of the mortgage in the chain of title. (East 43 BSD 4/30/2020 Ltr. at 3 (citing Ex. B)). Thus, defendants argue that because plaintiff failed to prove standing in that action, it cannot assert standing in this federal foreclosure action. (Id.) Similarly, defendants argue that the doctrines of res judicata and collateral estoppel bar plaintiff from asserting standing in this matter. (Id.) Defendants contend that the plaintiff is bound by the findings of the state court related to plaintiff's failure to prove standing and thus, defendants have a meritorious defense that would require dismissal of the instant case as well. (Id.)

In response, plaintiff explains that, in the Kings County Supreme Court action, which included the East 53 BSD defendants, the defendants filed an order to show cause seeking a determination that the plaintiff did not have an enforceable mortgage. (Pl.'s Mem. at 6). Essentially, the defendants took the position that although the Kings County Supreme Court Justice declined to dismiss the affirmative defense of lack of standing because he found that the "chain of assignments of the Mortgage produced by the plaintiff in support of its claim is incomplete," the court did not decide the issue of standing and held instead that the question of whether plaintiff is the holder of the Note and Mortgage is a question of fact to be determined at trial. (April 19, 2018 Order at 8, 13).

A review of Justice Vaughn's April 19, 2018 Order denying the motion to dismiss the counterclaim based on lack of standing demonstrates that the court did not actually decide the issue of standing, but noted that because the chain of assignments was incomplete, an issue of

fact had been raised; "[w]hether the plaintiff in this action is the holder of the Note and Mortgage is a question of fact to be determined at trial notwithstanding the denial herein of some of plaintiff's requested relief." (Pl.'s Mem. at 7 (quoting Order at 13)). What the court did find in that Order was that there was a "valid and enforceable mortgage" attached to the property and that the holder of the Loan had a security interest that was not affected by the sale of the property from the original borrower to defendant East 53 BSD shortly after the loan was issued. (Id.) The state court foreclosure action was subsequently dismissed on October 24, 2019, based on a motion filed by the tenants, pursuant to R.P.A.P.L. § 1303, who had not been served with notice of the action. (Id. at 7-8, Ex. B).

Plaintiff contends that because defendants have misread the Justice's Order, they lack any defense to the claims and that therefore, the default should be set aside. (Id. at 11). They argue that defendants' defense of *res judicata* fails because the state court never resolved the foreclosure action on its merits and the action was dismissed as a result of plaintiff's failure to notify the tenants of the foreclosure. (Id. at 13-14). See Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 285 (2d Cir. 2000) (holding that *res judicata* applies when the prior action was adjudicated on its merits; the prior action involved the plaintiffs or those in privity with them; and the claims asserted in the later action could have been asserted in the prior action); see also Burgos v. Hopkins, 14 F.3d 787, 789 (2d Cir. 1994) (requiring a final judgment on the merits in order to preclude the re-litigation of issues that could have been raised in the earlier action).

Similarly, plaintiff argues that defendants cannot raise a defense of collateral estoppel because the issue of standing was not resolved in the state court; instead, the court declined to dismiss the standing defense on the record before it, inviting the plaintiff to supplement the

record.  (Pl.'s Mem. at 14-15).  See In re PCH Assocs., 949 F.2d 585, 593 (2d Cir. 1991) (holding that in order to establish a defense of collateral estoppel, the party asserting the defense must show that the issues in the two proceedings are identical; that the issue raised in the current action was actually decided in the prior proceeding; there was full and fair opportunity to litigate the issue in the prior proceeding; and the issue previously decided was necessary to support a final judgment on the merits); see also Benjamin v. Coughlin, 905 F.2d 571, 575 (2d Cir. 1990).

Plaintiff is correct that neither defense of *res judicata* or collateral estoppel apply in this matter because the state court's Order makes it clear that no final judgment was entered and the case was dismissed on procedural grounds.  However, because the state court found that there was an issue of fact regarding plaintiff's standing based on the record before the court at the time, this Court finds that defendants' claim of lack of standing is a defense that is still extant and was not decided below.  Plaintiff argues that it has now provided all of the documentation necessary to establish the chain of assignments of the loan, explaining that there were four assignments:  1) the assignment from the Original lender[10] on December 21, 2007 to LaSalle Bank National Association; 2) the assignment on March 19, 2013 to Wells Fargo Bank, N.A.;[11] 3) the assignment on May 31, 2013 to U.S. Bank National Association as Trustee; and 4) the assignment on March 5, 2014 to the Secured Creditor.  (Pl.'s Mem. at 4-5).  The plaintiff also lists the allonges that evidence the various transfers.  (Id. at 5).  Finally, plaintiff contends that it currently is in physical possession of the original Note and all of the original Allonges.  (Id.) Thus, plaintiff argues that it has established standing to bring this action because at the time the

---

[10] According to plaintiff, the Original Lender, Countrywide Bank FNB, merged with Bank of America, N.A. and so the assignment was from Bank of America as successor-by-merger.  (Pl.'s Mem. at 4).

[11] Again, because LaSalle Bank had merged into Bank of America, Bank of America executed the second assignment at successor-by-merger. (Id.)

action was commenced, it not only had the underlying note and all the alloneges, but it was in physical possession of the original note.  (Id. at 12).

As the Second Circuit explained in OneWest Bank, N.A. v. Melina, 827 F.3d 214, 222 (2d Cir. 2016), a plaintiff bringing a foreclosure action under New York law establishes standing by "demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note." The plaintiff may demonstrate standing by attaching copies of the Note, the Mortgage and the alloneges showing an unbroken chain of assignments, see, e.g., Empire Cmty. Dev., LLC v. Giambalvo-West, No. 19 CV 5341, 2020 U.S. Dist. LEXIS 41722, at *11 (E.D.N.Y. March 6, 2020), or by providing affidavits from corporate representatives proving actual physical possession of the original note.  OneWest Bank, N.A. v. Melina, 827 F.3d at 223; Eastern Sav. Bank, FSB v. Whyte, No. 13 CV 6111, 2016 WL 236221 at *3 (E.D.N.Y. Jan. 20, 2016).

Defendants argue that in support of its claim of standing, plaintiff relies on corrective assignments of mortgages which are purportedly made effective several years prior to their execution.  (Defs.' Opp.[12] at 6).  Defendants argue that none of the endorsements on the alloneges is actually made on the face of the Amended and Restated Note, but appear on separate pages. (Id.)  Defendants further complain that the alloneges are all undated.  (Id. (citing U.S. Bank N.A. v. Moulton, 79 A.D.3d 734, 116 N.Y.S.3d 86 (2d Dep't 2020) (holding that an undated allonge without any indication that it was firmly affixed to the note rendered the allonge ineffective and was not sufficient to establish standing).  In addition, defendants contend that plaintiff has now presented a competing version of the Amended and Restated Notice that was not attached to the state court Complaint; the one attached to the state court Complaint did not have any alloneges

---

[12] Citations to "Defs.' Opp." refer to defendants' Memorandum of Law in Opposition to Plaintiff's Motion for the Appointment of a Receiver, dated May 21, 2020, ECF No. 76.

attached thereto, nor did that state court filing include Schedule 1 and Note Schedule 1, both of which are now attached to plaintiff's filings.  (Defs.' Opp. at 6).  Defendants argue that "[c]learly, the original alonges which were purportedly made prior to the corrective alonges are missing from the Amended and Restated Note in the both actions."  (Id. at 7).  However, this defense is not necessarily fatal to plaintiff's claims, so long as it can establish physical possession of the note.  See Eastern Savings Bank, FSB v. Whyte, 2016 WL 236221, at *3 (noting that "because physical delivery is sufficient to transfer both the note and the attendant right to foreclose, the Court need not address any purported deficiencies in the chain of title.").

Further, defendants argue that plaintiff cannot rely upon several assignments of mortgage executed on one date but made effective several years earlier.  (Id. (citing Wells Fargo Bank, N.A. v. Marchione, 69 A.D.3d 204, 887 N.Y.S.2d 615 (2d Dep't 2009)).  Defendants misconstrue the legal effect of retroactive assignments.  In Wells Fargo, the court held that the plaintiff could not rely on a mortgage assignment executed after commencement of the action, and made retroactive to a date before commencement, in order to contrive standing.  69 A.D.3d at 209–10, 887 N.Y.S.2d 615.  Here, the mortgage assignment to plaintiff was executed on March 5, 2014, some five years before this action commenced.  Therefore, there is no similar concern as to standing.

Although plaintiff has provided some of the documentation necessary to establish possession of the loan, the defendants have not been given an opportunity to challenge the bona fides of the documentation.  Such issues are better determined in a summary judgment motion where both parties are given a full and fair opportunity to review the documents and raise any issues.  Clearly, there was a concern on the part of the state court as to the sufficiency of the documentation showing the necessary assignments.  Plaintiff has not explained why now they

have the documentation which they did not have before. Accordingly, bearing in mind the preference of the courts to decide cases on their merits, Meehan v. Snow, 652 F.2d at 277, the Court finds that defendants' asserted defense may be "meritorious," and they should be given an opportunity to address plaintiff's claim that it now has standing and is the proper owner and holder of the Loan.

### 3. Prejudice

Defendants' final argument is that plaintiff cannot show prejudice as a result of the relatively short delay in defendants' response to the Amended Complaint. (Defs.' Opp. at 3). Defendants argue that the case is in its early stages and there is no indication that evidence has been lost or there will be any difficulties caused by the relatively short delay in this matter. (Id.)

Plaintiff, however, asserts that it will be prejudiced by vacating the default. (Pl.'s Mem. at 15-17). Plaintiff claims that the defendants have failed to make any payments on the Loan for over seven years while plaintiff continues to bear all of the costs of ownership. (Id. at 17). Plaintiff urges the Court to deny the motion to set aside the default; to do otherwise would allow defendant's "scheme" to go unabated. (Id.)

Although defendants' failure to act diligently has delayed the resolution of this case, plaintiff has not asserted that setting aside the notation of default will cause the loss of evidence, or create increased difficulties for discovery. See Ward v. Ramkalawan, No. 11 CV 4295, 2013 WL 1149108, at *5 (E.D.N.Y. Feb. 11, 2013), report and recommendation adopted, 2013 WL 1149068 (E.D.N.Y. Mar. 19, 2013) (finding that "delay alone is not a sufficient basis for establishing prejudice"). Plaintiff's concern about the continued delay and the opportunity for defendants to continue to defraud plaintiff out of its loan payments is a real concern. The Court

is cognizant of the risks of further delay in this matter while the issue of plaintiff's standing is adjudicated. However, because the Court recommends granting plaintiff's motion for the appointment of a Receiver to collect the rents in the interim (see discussion infra at pp. 24–28), the Court finds that any prejudice to the plaintiff will be reduced.

In light of the Second Circuit's strong preference for disposition on the merits and resolving all doubts in favor of the movant, the Court, with some reluctance, respectfully recommends that defendants' motion to vacate the notation of default be granted. If, however, defendants fail at any time to comply with their obligations to provide discovery or to respond to schedules set by the Court, the Court recommends that the default be reinstated at that time.

## C. Motion to Vacate as to the Culzac Defendants

On April 9, 2020, plaintiff filed a motion for entry of default against Jasmine and Judith Culzac, based on their failure to file an Answer to the Amended Complaint (ECF No. 65-1) and a default was entered against them on April 14, 2020. The Culzac defendants subsequently moved to vacate the entry of the default on May 25, 2020. (ECF No. 78).

### 1) Willfulness

According to the Culzac's Memorandum of Law in Support of Motion to Vacate Clerk's Entry of Certificate of Default, their failure to answer the Amended Complaint was not willful. As an initial matter, the Amended Complaint was filed on February 28, 2020 and the Culzacs were served on March 3, 2020, with their Answers due on March 24, 2020. (Culzac Mem.[13] at 2,

---

[13] Citations to "Culzac Mem." refer to the Memorandum of Law in Support of Motion to Vacate Clerk's Entry of Certificate of Default, submitted in support of the motions to vacate the default as to both Jasmine and Judith Culzac, ECF Nos. 77-1 and 78-1.

n. 2).  On March 13, 2020, prior to the deadline for their answers, Governor Cuomo declared a statewide closure of all businesses and a quarantine due to the COVID-19 pandemic.  (Id.)  Since neither of the Culzacs participated in any way in the actions alleged by plaintiff to have been to the detriment of the Property, and were not involved in the day-to-day management of Property, nor did they derive any rents after the Property was transferred to East 53 BSD, they were confused as to why they were included in the case.  (Id. at 3).  According to the Culzacs, it was not until a family member with legal training explained that they needed to secure an attorney that the Culzacs began to diligently search for counsel.  (Id.)

In support of this contention, the Culzacs submitted the Affirmation of Tamekia A. Hosang, Esq., daughter of Judith Culzac, who explains that when her mother and aunt were served with the pleadings, they were confused because the Property was no longer owned by Abraham W. Realty, and neither of them had any continuing role in running the Property. (Hosang Aff.[14] ¶¶ 2, 5).  She advised them that they needed to secure counsel and began seeking recommendations on their behalf.  (Id. ¶¶ 5, 6).  However, due to the pandemic, their ability to find an attorney was hampered and even after identifying qualified counsel, the process of retaining that person took longer than normal.  (Id. ¶¶ 7, 8).  Even as late as May 21, the date of her Affirmation, Ms. Hosang notes that her mother and aunt had still not met in person with counsel.  (Id. ¶ 9).

Plaintiff contends that the Culzacs deliberately ignored the Amended Complaint and because they acted deliberately, the default should not be vacated.  (Pl.'s Opp.[15] at 6 (citing Gucci Am., Inc. v. Gold Ctr. Jewelry, 158 F.3d 631, 635 (2d Cir. 1998))).  Plaintiff contends that

---

[14] Citations to "Hosang Aff." refer to the Affirmation of Tamekia A. Hosang, Esq. In Support of Motion to Vacate Clerk's Entry of Certificate of Default, dated May 21, 2020, ECF No. 78-2.
[15] Citations to "Pl.'s Opp." refer to plaintiff's Memorandum of Law in Opposition to Culzac Motions to Vacate Default, filed June 16, 2020, ECF No. 90.

the Culzacs have failed to allege specifically how their ability to engage legal counsel was impacted by the pandemic; according to plaintiff, physical presence is no longer necessary to procure legal counsel. (Pl.'s Opp. at 6). Plaintiff questions whether they lost access to the internet or phone service due to the pandemic and suggests that they be made to detail the steps taken to find counsel. (Id.) Plaintiff argues that because their motion lacks these details, their default should be considered deliberate in that they "changed their mind in deciding to respond to the Amended Complaint far too late in the game." (Id. at 7).

The Court credits the explanation provided by the Culzacs and their relative who clearly explained their confusion as to why they were included in the Amended Complaint. As set forth below, the Court too finds the allegations in the Amended Complaint as to the Culzacs' role and inclusion in this litigation to be puzzling as well. Moreover, contrary to plaintiff's arguments that the Culzacs could have easily found an attorney to handle this matter in early March, plaintiff conveniently forgets that during the very time frame in which the Culzacs were searching for counsel, the pandemic was raging in New York City. Offices were closed; many lawyers left town; and there was clearly no ability for the Culzacs to meet personally with counsel or to share the necessary documents needed in order to retain counsel because the whole City was under mandatory quarantine. Plaintiff's facetious comments questioning whether the Culzacs lost access to their phone or the internet during this time do not further the argument that the default was willful. Given that the Amended Complaint was served on March 3, 2020 and the Answer was due on March 24, 2020, during the height of the pandemic, the Court concludes that the default was not willful.

2) Meritorious Defenses

In addition, the Culzacs argue that they have meritorious defenses to the action.  (Culzac Mem. at 4).  Specifically, while Jasmine Culzac is alleged to be involved in the initial mortgage transaction as guarantor on behalf of Abraham W. Realty Corp., the Amended Complaint alleges that the new owner of the Property, defendants Solomon Singer and East 53 BSD, " 'have been and continue to illegally and improperly siphon substantial sums of money belonging to Plaintiff in connection with rents, proceeds and other income duly owed to Plaintiff.'" (Id. at 5 (quoting Am. Compl. ¶ 1)).  The Culzacs contend that the Amended Complaint is "deafeningly silent" as to why they are personally named in this action.  (Id.)  There are no allegations of fraud, malfeasance or misappropriation alleged against Jasmine Culzac; her only involvement is as guarantor of the original loan benefitting Abraham W. Realty Corp.  (Id. at 6).

There is even less information as to Judith Culzac.  Nowhere in the Amended Complaint does plaintiff indicate what, if any, her relationship is to any of the entities named as defendants. (Id.)  The only claim in the pleadings is that Judith Culzac is named as a party "due to any interest she may have in the Mortgaged Premises."  (Am. Compl. ¶ 23).

In response to the Culzacs' arguments as to their defenses, plaintiff, in its Memorandum in Opposition to the motion to vacate, now states that the Culzacs "*each* executed loan documents and realty transfer documents in the capacity of 'President' of Abraham Realty Corp." (Pl.'s Opp. at 2).  Abraham W. Realty is alleged to be the borrower, mortgagor and former property owner of the Property.  (Id. at 3).  Not only is Jasmine Culzac alleged to be guarantor on the Loan, but "[b]ased on publicly-recorded real estate documents, Judith Culzac appears in the chain of title of the Mortgaged Premises *at least four times.*"  (Id.)  Plaintiff further alleges that Judith Culzac executed the 2007 deed of the Property on behalf of Abraham

20

Realty, purportedly transferring the Property to herself.  (Id.)  Plaintiff concludes by stating that "Between [Jasmine] Culzac being in contractual privity under the loan documents as guarantor, and Judith Culzac having prior record interest in the Mortgaged Premises, each is a properly named defendant in this matter for their potential interest in the outcome of the foreclosure of the Mortgaged Premises."  (Id.)  Although the Amended Complaint contains no allegations as to Judith's role, plaintiff now argues that  the Mortgaged Premises has been conveyed to her at least twice and re-conveyed  to other third parties twice.  (Id. at 9).  Plaintiff argues that under New York law, any party having an interest in possession of the property must be joined.  (Pl.'s Opp. at 9 (citing R.P.A.P.L. § 1311)).

Whether these allegations are true or not, none of them, except for the allegation that Jasmine Culzac is the guarantor of the Loan, is set forth in the Amended Complaint.  Indeed, a review of the allegations in the Amended Complaint demonstrate that as to Judith Culzac, there is not a single allegation as to her relationship to the Property.  The Complaint is silent as to whether her interest is "subject and subordinate to" the plaintiff's mortgage, as is required to join a party as a necessary defendant.  R.P.A.P.L. § 1311.  Because questions remain as to the existence and nature of Judith Culzac's interest in the Property, she has potentially meritorious defenses to this action.

As for Jasmine Culzac, plaintiff asserts that under New York law, a guarantor is a proper defendant in a foreclosure action.  (Pl.'s Opp. at 8 (citing Minin v. 2494 Amsterdam Ave. LLC, 2011 N.Y. Misc. LEXIS 5203, 2011 NY Slip Op. 32879 (N.Y. Cty. Oct. 27, 2011))).  See also La Jolla Bank, FSB v. Whitestone Jewels, LLC, No. 13920/09, 2011 WL 6689859, 2011 NY Slip Op. 33362 (Queens Cty. Dec. 7, 2011) (holding that naming a guarantor is an acceptable way to preserve a deficiency claim arising out of a foreclosure action).  Plaintiff alleges that as

guarantor, Jasmine Culzac is personally obligated to pay any resulting deficiency.  (Pl.'s Opp. at 8-9).

Plaintiff describes Jasmine Culzac as the "undisputed" guarantor of the debt, but this mischaracterizes the Culzacs' position.  (Pl.'s Opp. at 8).  The Culzacs concede only that plaintiff has portrayed Jasmine Culzac as a guarantor, and maintain that plaintiff has failed to substantiate this designation.  (Culzac Mem. at 6–7).  Jasmine Culzac's personal liability is alleged to arise "pursuant to the Guaranty (as such term is defined below)," (Am. Compl. ¶ 16), but the Amended Complaint does not define "Guaranty" or further explain the assertion in any way.[16]  Only in its Motion to Appoint a Receiver does plaintiff cite to the Guaranty of Recourse Obligations ("Guaranty"[17]) dated October 11, 2007, and signed by Jasmine Culzac, apparently in her personal capacity.  (Polcari Aff.[18] ¶ 10).  The Guaranty provides that the Guarantor  "shall have joint and several liability for the Guaranteed Obligations" under the Note and Mortgage.  (Guaranty ¶ 1).  Plaintiff offers no reason why this information was not alleged in its Amended Complaint, and Jasmine Culzac appears to dispute the validity of the Guaranty.  To the extent Jasmine Culzac contests the bona fides of this document or the capacity in which it was signed, such arguments are better considered after a full airing of the merits.   Based on the allegations in

---

[16] Attached to the Amended Complaint are the Mortgage and Note signed by Jasmine Culzac in her capacity as president of Abraham W. Realty Corporation.  (Am. Compl. Ex. A at 8; Ex. B at 7, 9, 28).  These documents, standing alone, are insufficient to establish Jasmine Culzac's personal liability unless and until it has been shown necessary in the interest of fairness or preventing fraud.  See Gartner v. Snyder, 607 F.2d 582, 586 (2d Cir. 1979) (observing that "New York law … allows individuals to incorporate for the very purpose of avoiding personal liability," but courts may disregard corporate form when appropriate to pierce the corporate veil).

[17] Citations to "Guaranty" refer to the agreement dated October 11, 2007, signed by Jasmine Culzac, attached as Exhibit D to the Polcari Affidavit (see infra n. 18).

[18] Citations to "Polcari Aff." refer to the Affidavit of Joseph Polcari, the asset manager of LNR Partners LLC, the authorized special servicer of the Loan, filed on April 7, 2020, ECF No. 63-2.

the Amended Complaint, or lack thereof, the Court finds that Jasmine Culzac also has potentially

meritorious defenses to this action.

    3) <u>Prejudice</u>

Finally, the Culzacs argue that plaintiff will not be prejudiced if the Court allows them

the opportunity to be heard in this action.  (Culzac Mem. at 6).  Discovery has not begun for any

defendant and the short delay caused by the Culzacs' inability to get a lawyer during the

pandemic alone does not establish prejudice.  (<u>Id.</u> (citing <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d

90, 98 (2d Cir. 1993)).

Plaintiff argues that the delay that will occur if the default is vacated is clear.  Plaintiff

alleges that the "defendants have collectively undertaken a series of conveyances, transactions,

and litigation tactics which have cost Plaintiff extraordinary amounts of time and money."  (Pl.'s

Opp. at 11).  Plaintiff claims that it has been attempting to enforce its mortgage for five years and

that if the default is set aside, "this scheme" will continue unabated.

While the Court appreciates the length of time that the mortgage on this Property has

been outstanding, it is clear that between the issuance of the mortgage in October 2007 and the

commencement of the State Court action in 2014, seven years passed before any action was

taken to enforce the terms of the Mortgage and Assignment of Rents.  Although plaintiff

commenced the State Court foreclosure action in 2014 after it acquired the Loan through

assignments, the action was ultimately dismissed on October 24, 2019 by the State Court judge

based on his finding that there were procedural defects in plaintiff's own pleadings.  It was not

until May 2019 that the instant action was commenced in this Court and even then, plaintiff did

not include the Culzacs as defendants in the matter.  Finally, on February 28, 2020, plaintiff filed

the Amended Complaint naming the Culzacs.  All in all, between the commencement of the State

Court action in 2014 and the February 2020 Amended Complaint, there was an additional five

plus years delay that in part is attributable to choices made by plaintiff.  Another delay of a

month and a half, between the time the Answer to the Amended Complaint was due until the

Culzac's Motion to Vacate was filed, is not the type of delay that constitutes prejudice sufficient

to warrant a denial of the motion to vacate, particularly in light of the intervening pandemic.

Accordingly, it is respectfully recommended that the Culzacs' motion to vacate the

default be granted.

D. <u>Motion to Appoint a Receiver</u>

On March 7, 2020, plaintiff moved for the appointment of a Receiver in this case.  (<u>See</u>

Pl.'s Receiver Mem.[19])  Plaintiff argues that a receiver is necessary because the borrower has

repeatedly defaulted on its obligations under the mortgage, that the Property is being

mismanaged, leading to numerous building violations, and that the new owner of the Property

"has and continues to siphon rental proceeds."  (<u>Id.</u> at 2).  Moreover, plaintiff contends that the

mortgage authorizes the appointment of a receiver.  (<u>Id.</u>)

In <u>Citibank, N.A. v. Nyland (CF8), Ltd.</u>, the Second Circuit found that it was "entirely

appropriate for a mortgage holder to seek the appointment of a receiver when the mortgage

authorizes such appointment, and the mortgagee has repeatedly defaulted on conditions of the

mortgage which constitute one or more events of default.  839 F.2d 93, (2d Cir. 1988); <u>see also</u>

<u>Sovereign Bank v. 347 E. 173 LLC</u>, No. 11 CV 1061, 2011 U.S. WL 2693525, at *3 (S.D.N.Y

---

[19] Citations to "Pl.'s Receiver Mem." refer to plaintiff's Memorandum of Law, filed as Exhibit A to the Motion to Appoint Receiver, ECF No. 63-1.

June 29, 2011) (holding that a court may appoint a receiver to protect and conserve mortgaged property where there is a pending foreclosure action). Among the factors considered by courts in determining whether to appoint a receiver are 1) whether there is fraudulent conduct on the part of the defendant; 2) imminent danger of a loss or diminution in value to the property; 3) the probability of harm to the plaintiff balanced against the injury to the parties opposing the appointment of a receiver; 4) plaintiff's probable success on the merits and the possibility of irreparable injury to plaintiff's interest; 5) the inadequacy of legal remedies; 6) whether the receivership will protect the interest of the plaintiff and others. See Greystone Bank v. Tavarez, No. 09 CV 5192, 2010 WL 11651639, at *2 (E.D.N.Y. Apr. 26, 2020).

Here plaintiff has submitted the Affidavit of Joseph Polcari, the asset manager of LNR Partners, LLC, the authorized special servicer of the Loan.  According to Mr. Polcari, the Property is almost fully occupied, with tenants paying monthly rental fees.  (Polcari Aff. ¶ 17). Despite the fact that the terms of the loan entitle plaintiff to receive these rents, none of the Rental Proceeds have been paid to plaintiff.  (Id. ¶ 18).  According to the Loan documents, the rental income generated from the tenants was additional collateral for the Loan and should have been paid to the lender to service the debt.  (Id. ¶¶ 18-22 (citing Am. Compl. Ex. B, Art. I)). Although the Loan Documents conveyed the right to the Borrower to collect and use the Rental Proceeds, that license was automatically revoked upon the Borrower's default on the Mortgage payments.  (Pl.'s Receiver Mem. at 4).  Thus, plaintiff contends that the Rental Proceeds should be paid to plaintiff.

Mr. Polcari's Affidavit also sets forth various examples of defendants' mismanagement of the Property.  He asserts that they have failed to pay all or a majority of the real estate taxes owed on the Property.  (Id. ¶¶ 23-27).  In total, Mr. Polcari reports that plaintiff has paid

$566,900.00 in taxes, and an additional $89,934.65 in unpaid insurance, in order to ensure that liens are not assessed against the Property.  (Id. ¶ 27).  Apart from their failure to pay their financial obligations, defendants also have failed to maintain the premises, racking up multiple health and safety violations brought by the New York City Department of Buildings, many of which remained outstanding as of the date of Mr. Polcari's Affidavit.  (Id. ¶ 28).

Defendants oppose the appointment of a receiver, arguing that they are adequately maintaining the Property, they have numerous defenses to the action, and that certain of plaintiff's causes of action for unjust enrichment and moneys had and received are subject to dismissal as a matter of law.  (Defs.' Opp. at 2).  Defendants argue that "'[t]he appointment of a receiver is considered to be an extraordinary remedy, and should be employed cautiously and granted only when clearly necessary to protect plaintiff's interest in the property.'" (Id. at 4 (quoting Rosen v. Siegel, 106 F.3d 28, 34 (2d Cir. 1997))).  In support of their argument that there has been no fraudulent conduct on the part of the defendants, they have submitted the Declarations of Solomon Singer and Moshe Deutsch.

Defendant Singer, the current owner of the premises, attaches to his Declaration details of the work allegedly performed at the Property over the last three years.  (Singer Decl.[20] ¶¶ 2, 4). He asserts that since December 2016, East 53 BSD has spent over $500,000 to maintain the Premises, disputing plaintiff's claim that the violations have gone unabated.  (Id. ¶¶ 6, 7).  Moshe Deutsch declares that he is a managing partner at YHT Management Co. ("YHT"), which currently manages close to 100 buildings in New York State.  (Deutsch Decl.[21] ¶¶ 1, 2).  YHT was retained to manage the Property in December 2016, noting that in 2013, there were

---

[20] Citations to "Singer Decl." refer to the Declaration of Solomon Singer, dated May 21, 2020, ECF No. 76-4.

[21] Citations to "Deutsch Decl." refer to the Declaration of Moshe Deutsch, dated May 21, 2020, ECF No. 76-5.

approximately 200 Alternative Enforcement Program violations and the tenants were very unhappy.  (Id. ¶¶ 3, 4).  According to Mr. Deutsch, over the last five years, the owner of the Property has been "diligently engaged in ensuring that the necessary measures and precautions" to keep the Property in compliance with the codes.  (Id. ¶ 5).  He lists in his Declaration the various actions taken in response to violations in order to demonstrate that the owner has invested hundreds of thousands of dollars to maintain the Premises and clear the violations.  (Id. ¶¶ 6-25).

Defendants further argue that a receiver should not be appointed because they have substantial defenses to the action - namely, the plaintiff's lack of standing – plus plaintiff has "already lost a foreclosure action in Kings County Supreme Court." (Defs.' Opp. at 5-7). Finally, defendants raise arguments in support of their contention that various other claims in plaintiff's complaint are subject to dismissal.  (Id. at 8-9).

Absent from defendants' Memorandum of Law and from the Declarations submitted by Singer and Deutsch is any mention of the defendants' complete and utter failure to pay anything toward the Loan.  Defendants simply do not address plaintiff's argument that under the Loan documents, their failure to pay the mortgage payments constitutes a default that automatically rescinds the license that allows defendants to collect the Rental Proceeds.  The Loan explicitly states:

> Section 6.2 Remedies.  If an Event of Default shall have occurred, then:
>
> (c) Mortgagee, to the maximum extent permitted by law, shall be entitled,  as a matter of right, to the appointment of a receiver of the Property, without notice or demand, and without regard to the adequacy of the security for the Loan Obligations or the solvency of Mortgagor.  Mortgagor hereby irrevocably consents to such appointment and waives notice of any application therefor.  Any such receiver or receivers shall have all the usual powers and duties of receivers in like or similar cases and all the powers and duties of Mortgagee in case of entry and shall continue as such and exercise all such powers until the date of

confirmation of sale of the Property, unless such receivership is sooner terminated.

(Polcari Aff., Ex. B).  Thus, regardless of whether defendants have in fact been maintaining the

Property, the Borrower contractually agreed to the appointment of a receiver.  As the court in

Greystone Bank v. Tavarez noted, "there is little hardship in enforcing the terms of the parties'

bargain."  2010 WL 11651639 at *2.  Indeed, in that case, a receiver was appointed where the

borrower received rents from the property and yet had failed to make payments under the

mortgage and failed to pay real estate taxes.  Id.

     Considering the specific language in the loan agreements, in which the borrower authorized

the appointment of a receiver in the event of a default, the Court finds the arguments raised by

defendants as to the factors relevant to a determination of the equitable remedy of a receivership

to be inapplicable in this case where there is an explicit contractual provision authorizing the

appointment of a receiver upon a default.  Defendants have not disputed that they are in default,

nor have they submitted any evidence to refute plaintiff's claim that no mortgage payments have

been made for seven (7) years.  Even if there were no explicit contract provision, and the Court

were to consider the factors relevant to the equitable considerations, the Court finds that, by

failing to pay taxes and risking the imposition of liens on the Property, the defendants have

engaged in behavior that threatens the value of the Property.  Moreover, as discussed above,

while there may or may not be a dispute as to plaintiff's standing in this action, the appointment

of a receiver is appropriate to preserve the status quo while the parties litigate these issues.[22]

---

[22] Apart from insisting that it will prevail on the issue of standing, plaintiff also argues that it will prevail on its other claims of unjust enrichment and moneys had and received.  (Plaintiff's Reply In Further Support of Its Motion for the Appointment of A Receiver, dated May 28, 2020, ECF No. 82).

Accordingly, the Court respectfully recommends that plaintiff's motion for appointment of a receiver be granted.

<u>CONCLUSION</u>

The Court respectfully recommends vacatur of the defaults entered against defendants East 53 BSD, Solomon Singer, and the Culzacs.  The Court further respectfully recommends that a receiver be appointed for the subject property.

Any objections to this Report and Recommendation must be filed with the Clerk of Court, with a copy to the undersigned, within fourteen (14) days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal the District Court's Order. <u>See</u> 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72; <u>Caidor v. Onondaga Cnty.</u>, 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
　　　December 18, 2020

　　　　　　　　　　　　　　　/s/ Cheryl L. Pollak
　　　　　　　　　　　　　Cheryl L. Pollak
　　　　　　　　　　　　　Chief United States Magistrate Judge
　　　　　　　　　　　　　Eastern District of New York

29